**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CAROLINA ESTRELLA ORTIZ,

       Plaintiff,

    vs.                              CIV No. 21-1016 KK

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 21), dated April 22, 2022, challenging the determination of the Acting Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. On July 25, 2022, the Commissioner filed a response, and on August 22, 2022, Plaintiff filed a reply. (Docs. 25; 28.) The Court has thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, finds that Plaintiff's motion is well-taken and will be GRANTED.

## I. BACKGROUND AND PROCEDURAL POSTURE

In November 2018, Plaintiff filed an application for social security disability income. (*See* Administrative Record[2] ("AR") 171-75.) Plaintiff alleged that she had become disabled on July 4, 2016, due to a traumatic brain injury, bipolar disorder and post-traumatic stress disorder ("PTSD").

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned conducting dispositive proceedings and ordering the entry of final judgment in this case. (Doc. 9.)

[2] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on December 21, 2021. (Doc. 13.)

(AR 71-72.) Plaintiff's application was denied at the initial level and on reconsideration. (AR 71-85, 87-106.) Plaintiff requested a hearing (AR 121-23), which ALJ Lillian Richter conducted on October 29, 2020 (*see* AR 36-69). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Mary Weber (the "VE"). (AR 36-69.)

On March 31, 2021, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (AR 10-22.) Plaintiff requested that the Appeals Council review the ALJ's decision (AR 29-30), and on September 24, 2021, the Appeals Council denied the request for review (AR 1-4), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On October 19, 2021, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1.)

## II.  LEGAL STANDARDS

### A.  Standard of Review

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted) or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks, brackets, and citation omitted omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citations omitted). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## B.  Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 416.920(a)(4). If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *See Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 416.920(e), 416.945(a). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III. THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's SSI claim pursuant to the five-step sequential evaluation process. (AR 10-22.) First, ALJ Richter found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her application date of November 29, 2018. (AR 12 (citing 20 C.F.R. § 416.971 *et seq*.).) The ALJ found at step two that Plaintiff suffered from the severe impairments of "subarachnoid hemorrhage; traumatic brain injury; endometriosis status-post laparoscopies with chronic pelvic

pain; lumbago/chronic back pain; generalized anxiety disorder; attention deficit hyperactivity disorder (ADHD); post-traumatic stress disorder (PTSD); depression with psychotic features; neurocognitive disorder; bipolar disorder; somatic symptom disorder; adjustment disorder with mixed anxiety and depression; and chronic pelvic pain." (AR 12 (citing 20 C.F.R. § 416.920(c).) The ALJ also discussed various conditions that she determined did not "cause[] more than minimal limitation in [Plaintiff's] ability to perform basic work activities for the requisite durational period" and were therefore not "severe," including femur and rib fractures sustained in a July 2016 motor vehicle accident, colitis, acute bronchitis, and cannabis use disorder. (AR 13 (citing 20 C.F.R. § 416.922).) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of listed impairments under Appendix 1 of the SSA's regulations. (AR 13-15 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).)

Next, the ALJ reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, Plaintiff's own subjective symptom evidence, and third-party statements from Plaintiff's grandfather and brother. (*See* AR 16-21.) Having done so, the ALJ concluded that for the relevant period, Plaintiff possessed an RFC to

> perform light work as defined in 20 [C.F.R. §] 416.967(b) except with the following limitations: perform simple, routine, and repetitive work; occasional interaction with supervisors and coworkers and no interaction with members of the public; understand and communicate simple information; remain on task for two hours at a time; make simple work related decisions in a workplace with few changes in the routine work setting; cannot perform assembly line production work; never climb ladders, ropes or scaffolds; and should avoid exposure to unprotected heights and hazardous machinery.

(AR 15.)

Because she determined that Plaintiff "ha[d] no past relevant work" at step four (AR 21 (citing 20 C.F.R. § 416.965)), the ALJ proceeded to step five, where she determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 21 (citing 20 C.F.R. §§ 416.969, 416.969(a)).) The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since November 29, 2018, the date [her] application was filed." (AR 22 (citing 20 C.F.R. § 416.920(g)).)

## IV.  DISCUSSION

Plaintiff contends that the ALJ failed to resolve a conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT") (Doc. 21 at 5-7), failed to conduct a *Trimiar* analysis (*id.* at 7-9), failed to properly assess the prior administrative findings of state agency psychologist Dr. Holloway (*id*. at 9-13), and failed to properly assess the opinions of consultative psychiatrists Drs. Gzaskow and Hughson (*id*. at 13-27.) For the reasons that follow, the Court finds that the ALJ erred by failing to either incorporate a moderate mental limitation into the RFC or explain why she rejected that limitation. The Court will reverse and remand this matter for the Commissioner to address this error. *See Clifton*, 79 F.3d at 1010. Because a reevaluation of Dr. Holloway's prior administrative findings may impact the other determinations at issue in this proceeding, the Court will remand on this basis without addressing Plaintiff's remaining claims of error. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### A.  The ALJ erred by failing to account for a moderate mental limitation to which Dr. Holloway opined.

Plaintiff argues that the ALJ erred in assessing the prior administrative findings of Joan Holloway, Ph.D, the state agency psychologist on initial review.[3] (Doc. 21 at 9-13.) Dr.

---

[3] Although Plaintiff focuses her argument on Dr. Holloway's prior administrative findings, (*see* Doc. 21 at 9-13), the Court acknowledges that Debby Doughty, Ph.D, a state agency consultant who completed an MRFCA at the reconsideration level, provided prior administrative findings that are similar in all material respects to those of Dr.

Holloway's prior administrative findings made up part of the evidence upon which the ALJ relied in assessing Plaintiff's RFC. (*See* AR 19.) Yet, according to Plaintiff, the ALJ did not adequately consider all of Dr. Holloway's moderate mental limitations. (Doc. 21 at 11-12.) Specifically, Plaintiff insists that the ALJ failed to discuss moderate limitations Dr. Holloway assessed in her ability to "maintain attention and concentration for extended periods" and in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*See id.* at 12 (citing AR 15, 19, 82).)

Because Plaintiff applied for disability benefits after March 27, 2017, ALJ Richter was required to evaluate medical opinions in her case under the revised regulations found in 20 C.F.R. § 416.920c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *5 & n.8 (10th Cir. July 6, 2021). Medical opinions from non-examining state agency consultants, like Dr. Holloway, are classified as "prior administrative findings[,]" but the rules for weighing them are the same as for weighing medical opinions. *See Vigil v. Saul*, No. CV 20-632 CG, 2021 WL 2117184, at *5 (D.N.M. May 25, 2021) (citing 20 C.F.R. §§ 404.1531a, 404.1520c); *see also* 20 C.F.R. §§ 416.920c(a)-(c)); 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Under the revised regulations, no specific evidentiary weight or deference is given to prior administrative findings. *See* 20 C.F.R. § 416.920c(a). Instead, they are evaluated on equal

---

Holloway. (*Compare* AR 78-83, *with* AR 98-104.) Indeed, the ALJ considered Dr. Holloway and Dr. Doughty's findings collectively without distinction, finding both consultants' findings "generally persuasive." (*See* AR 19.) As such, the Court's analysis herein applies with equal force to the ALJ's consideration of Dr. Doughty's prior administrative findings.

footing using the factors enumerated in the regulations. *See* 20 C.F.R. § 416.920c(c)(1)-(5). Of the enumerated factors, "supportability" and "consistency" are the "most important," and an ALJ must explain how she considered these factors when assessing the prior administrative findings' persuasive value. *See* 20 C.F.R. § 416.920c(b)(2). When an ALJ considers the persuasiveness of a medical source's opinions or findings, she must "consider all relevant evidence in the case record," *Silva v. Saul*, No. CIV 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (citing 20 C.F.R. §§ 404.1520b, 416.920b), and must provide the Court with a "sufficient basis to determine that appropriate legal principles have been followed[,]" *Jensen*, 436 F.3d at 1165 (quotation omitted). But, here, Plaintiff contends that the ALJ failed to properly consider Dr. Holloway's prior administrative findings in accordance with these regulations and principles.

Some consideration of the administrative context in which state agency consultants complete their assessments is helpful to the Court's analysis of Plaintiff's claim. Non-examining state agency psychological consultants, such as Dr. Holloway, prepare their medical assessment forms in the electronic Claims Analysis Tool ("eCAT"). *See Carrillo v. Saul*, No. 1:19-CV-00292-KRS, 2020 WL 6136160, at *5 (D.N.M. Oct. 19, 2020). First, they complete the Psychiatric Review Technique ("PRT"). *See id.* The PRT is used at steps two and three of the initial-level sequential evaluation process to determine whether a medically determinable mental impairment is severe and, if so, whether it meets or medically equals a listed impairment. *See* Program Operation Manual System ("POMS") DI § 24583.005(A). Here, Dr. Holloway examined the Listing of Impairment's "Paragraph B" criteria for mental impairments at the initial level of review. (AR 80). She determined that Plaintiff had a mild limitation in the ability to adapt or manage herself and moderate limitations in the abilities to understand, remember, and apply information; to interact with others; and to concentrate, persist, or maintain pace. (AR 80.)

At step four of the sequential evaluation process, state agency consultants use another eCAT form, the Mental Residual Functional Capacity Assessment ("MRFCA"), to assess a claimant's mental RFC. *See Young v. Berryhill*, No. CIV 16-1024 GJF, 2018 WL 840022, at *14 n.11 (D.N.M. Feb. 13, 2018); POMS DI § 24510.060(A)(1). While the "PRT has overall ratings for various categories, including maintaining concentration, persistence, or pace, the MRFCA has more focused categories for use in determining RFC." *Lull v. Colvin*, 535 F. App'x 683, 686 (10th Cir. 2013). The MFRCA form directs the consultant to first "record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function" in a question-and-answer worksheet.[4] *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. Aug. 25, 2016) (quoting POMS DI § 24510.061(A)). Next, the consultant is directed to "prepare a narrative statement of mental RFC." *Id*. If a consultant determines that a claimant has moderate limitations in an area of functioning, she must describe the "degree and extent of the capacity or limitation" in "a narrative format." *Id*. Finally, at the end of the MRFCA form, there is a section entitled "MRFC – Additional Explanation," which is reserved for "[a]ny other assessment information deemed appropriate."[5] (*See* AR 81-83.)

---

[4] Previously, state agency consultants completed special form SSA-4734-F4-SUP, which was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). *Vienna*, 2019 WL 4686718, at *4 n.8. Although MRFCAs completed through eCAT no longer include the same section labels, "parties and the courts have continued to refer to the checkbox portion of each MRFCA as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id*. Here, the Court refers to these separate sections of the MRFCA as the "worksheet portion" and the "narrative portion."

[5] The instructions printed on the MRFCA form provide:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaption). Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation box.

(AR 81-82.)

Once a disability claim reaches the ALJ stage, the "MRFCA form is no longer the adjudication of the case; rather it becomes *evidence* that the ALJ must consider in making her own new, independent findings." *Silva*, 203 F. Supp. 3d at 1159. All findings from the MRFCA form are considered by the ALJ and, generally speaking, "[t]he distinction between [the worksheet portion] and [the narrative portion], which was meaningful for the physician adjudicator, has little to no bearing on how the ALJ must weigh the MRFCA report." *Carrillo*, 2020 WL 6136160, at *6 (quoting *Silva*, 203 F. Supp. 3d at 1159-60).

Dr. Holloway found, in the worksheet portion of her MRFC, that Plaintiff was moderately limited in the following areas of mental functioning:

- understanding and remembering detailed instructions;

- carrying out detailed instructions;

- maintaining attention and concentration for extended periods;

- completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and

- interacting appropriately with the general public.

(AR 82-83.) Although Dr. Holloway identified these moderate limitations in the worksheet portion of her MRFCA, she did not follow the instructions to provide a substantive explanation in the narrative portion of each section of her MRFC report. (*See* AR 82-82.) Instead, she merely entered an "x" in the space designated for "[e]xplain[ing] in narrative form" the limitations found in each area of mental functioning. (AR 82-83.) Dr. Holloway did, however, expound upon Plaintiff's functional limitations in the "Additional Explanation" portion of the MRFCA, where she indicated that Plaintiff retained the capacity to:

> understand, recall and perform simple and detailed tasks of [three] to [four] steps and make related judgments[,] . . . to concentrate for two hour periods with routine breaks and pace and persist for [an eight] hour work day and 40 hour work week despite psychological symptoms[,] . . . [and] to interact appropriately with coworkers and supervisors to learn tasks, accept criticism, and attend meetings[,] . . . [and] to interact with the general public on an incidental basis[,] . . . [and] to adapt to work setting and some changes in the work setting.

(*See* AR 83.)

In evaluating Dr. Holloway's prior administrative findings, the ALJ recited the relevant portions of Dr. Holloway's "Additional Explanation," but she did not discuss the moderate limitation findings Dr. Holloway assessed in the worksheet portion of the same MRFCA. (*Compare* AR 19, *with* AR 82-83.) As a general matter, the ALJ found that the "available medical evidence . . . supported [the state agency consultants'] findings" and that the consultants' "opinions [were] consistent with record evidence that demonstrate[d] that while the claimant ha[d] significant limitations from her mental health impairments, she [was] also able to engage in activities of daily living including driving, shopping, household chores, and caring for her grandmother." (AR 19 (citing AR 706-11).) Ultimately, the ALJ determined that Dr. Holloway's findings, and similar findings of the state agency consultant on reconsideration, were "generally persuasive." (AR 19).

Plaintiff insists that the ALJ's findings in this regard were "not based on substantial evidence because [the ALJ] failed to consider some of Dr. Holloway's moderate mental limitations and instead relied upon [Dr. Holloway's] inconsistent MRFC—Additional Explanation section." (Doc. 21 at 11-12). More fundamentally, Plaintiff suggests that Dr. Holloway's "Additional Explanation" failed to explain or incorporate certain moderate mental limitations Dr. Holloway herself found in the worksheet portion of her MRFCA. (*Id*. at 12 (citing AR 82-83).) Because the ALJ relied in part upon Dr. Holloway's findings, which he found persuasive, supported, and

consistent with the record evidence, Plaintiff suggests that the ALJ's RFC, in turn, is not supported by substantial evidence. (*See id*. at 11-13.)

The ALJ purported to account for Plaintiff's mental impairments by limiting her to "unskilled work with interaction and adaptation restrictions." (AR 18.) The relevant portions of the ALJ's RFC limited her to:

> simple, routine, and repetitive work; occasional interaction with supervisors and coworkers and no interaction with members of the public; understand[ing] and communicat[ing] simple information; remain[ing] on task for two hours at a time; mak[ing] simple work related decisions in a workplace with few changes in the routine work setting; . . . [and no] assembly line production work.

(AR 15.) In reaching this RFC, Plaintiff maintains that the ALJ failed to consider or account for Dr. Holloway's opined moderate limitations in her "ability to maintain attention and concentration for extended periods" or in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Doc. 21 at 12 (citing AR 15, 19, 82).)

The Commissioner, in contrast, insists that by restricting Plaintiff to simple, routine, and repetitive work, no assembly line production work, and few changes in the routine work setting, the ALJ effectively accounted for all of the moderate mental limitations Dr. Holloway assessed in her MRFC. (Doc. 25 at 10 (citing AR 15).) The Commissioner emphasizes that, notwithstanding the moderate mental limitations she noted, Dr. Holloway herself found that Plaintiff could perform "simple and some detailed tasks *for two hours at a time* and *with sufficient pace and persistence to complete an 8-hour workday and 40-hour workweek* despite her psychological symptoms." (*Id*. (citing AR 83, 104) (emphasis added).) The Commissioner also suggests the Tenth Circuit has affirmed ALJ decisions in similar circumstances. (Doc. 25 at 10 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016); *Richards*

*v. Colvin*, 640 F. App'x 786, 790 (10 Cir. 2016).) Moreover, relying upon a handful of opinions issued in 2017 and 2018, the Commissioner contends that judges in this District have rejected arguments similar to those advanced by Plaintiff here. (*Id*. at 11 (discussing the holdings in *Trujillo v. Berryhill*, No. 16-cv-851-GBW, 2017 WL 2799981, at *9 (D.N.M. June 23, 2017); *Baca v. Berryhill*, No. 16-cv-246-WPL, 2017 WL 3267745, at *3 (D.N.M. July 31, 2017); *Sanchez v. Berryhill*, No. 16-1160-KK, 2018 WL 1064570, at *11-13 (D.N.M. Feb. 23, 2018); *Rimer v. Berryhill*, No. 17-cv-0696-SMV, 2018 WL 2206927, at *4 (D.N.M. May 14, 2018); *Padilla v. Berryhill*, No. 1:17-cv-0329-GJF, 2018 WL 3830930, at *14-15 (D.N.M. Aug. 13, 2018).)

Taken together, the cases the Commissioner references support the proposition that an ALJ *may sometimes* account for moderate mental limitations by limiting a claimant to particular kinds of work activity. *See, e.g., Vigil*, 805 F.3d at 1204 (recognizing that an ALJ may account for moderate mental limitations in concentration, persistence, or pace with an RFC restricting a claimant to unskilled work); *Smith*, 821 F.3d at 1269 ("[W]e have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity.") (citing *Vigil*, 805 F.3d at 1204); *Richards*, 640 F. App'x at 790 (concluding that an RFC limitation to simple or unskilled work "can adequately account for a claimant's mental impairments, depending on their nature"). But the Tenth Circuit has also clarified that a limitation to unskilled work does *not always* adequately address a claimant's mental limitations. *See Vigil*, 805 F.3d at 1204 ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations."); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments.") (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)). Accordingly, the inquiry does not end, as the

Commissioner suggests, at the RFC's inclusion of a restriction to simple, routine, and repetitive work.

Plaintiff, for her part, relies upon a more recent case from this District, which she describes as "nearly factually identical": *Vienna v. Saul*, No. 2:18-cv-00783-LF, 2019 WL 4686718 (D.N.M. Sept. 26, 2019). In *Vienna*, the Honorable Laura Fashing determined that the ALJ erred when he failed to either incorporate in the RFC or explain why he rejected moderate mental limitations assessed by the state agency psychological consultant in his MRFCA. *See id.* at *3-4. Judge Fashing reasoned that the ALJ's RFC limitation to simple, routine tasks did not adequately account for the consultant's opined moderate mental limitations in two areas: the ability to "maintain regular attendance and be punctual within customary tolerances" and the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id*. at *6. In so reasoning, Judge Fashing noted that these mental abilities are "critical for performing unskilled work." *Id*. at *7 (quoting POMS DI § 25020.010(B)(3)(e),(i)).

Plaintiff urges the Court to adopt Judge Fashing's rationale in *Vienna* and to find that the ALJ in this case likewise failed to incorporate or explain her rejection of Dr. Holloway's assessed moderate mental limitations. (Doc. 28 at 6). Although Judge Fashing's decision in *Vienna* is not directly on point in all respects,[6] the Court has repeatedly adopted similar rationale and will do so again in this case. *See, e.g.*, *Salazar v. Kijakazi*, No. Civ. 21-149 KK, 2022 WL 4365864, at *6-9 (D.N.M. Sept. 21, 2022); *Lucero v. Kijakazi*, No. Civ. 21-425 KK, 2022 WL 2315957, at *9-12

---

[6] Both *Vienna* and the instant case involve a moderate limitation in the ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," but the second moderate limitation at issue in *Vienna* was in the ability to "maintain regular attendance and be punctual within customary tolerances," where the second moderate limitation in this case is in the ability to "maintain attention and concentration for extended periods."

(June 28, 2022); *Edgell v. Kijakazi*, No. Civ. 21-269 KK, 2022 WL 1987846, at *4-9 (D.N.M. June 6, 2022); *Romero v. Kijakazi*, No. Civ. 21-249 KK, 2022 WL 1553295, *8-10 (D.N.M. May 17, 2022).

The Court begins with the premise that by assessing a moderate limitation in a claimant's ability to perform an activity, a medical source indicates that the ability is "impaired." *See* POMS DI § 24510.063(B)(2) (discussing the completion of the worksheet portion of SSA-4734-F4SUP and providing that the box for "moderately limited" on a MRFCA form should be checked "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired"); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[A] moderate impairment is not the same as no impairment at all."). Moreover, an ALJ may rely exclusively on the narrative portion of MRFCA findings *only if* that "narrative does not contradict any . . . limitations [in the worksheet portion of the MRFCA] and describes the effect each [worksheet] limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (citing *Carver v. Colvin*, 600 F. App'x 616, 618-19 (10th Cir. 2015)). If, on the other hand, the MRFCA "narrative fails to describe the effect that each of the [worksheet-portion] moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in [the worksheet portion], the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver*, 600 F. App'x at 619.

Applying these principles, the Court must consider whether the findings in Dr. Holloway's "Additional Explanation" portion of her MRFCA encapsulate or contradict moderate limitations she assessed in the worksheet portion of the same MRFC. First, her narrative finding that Plaintiff was "able to concentrate for two[-]hour periods" appears at odds with her earlier worksheet-portion finding that Plaintiff was "moderately limited" in her ability "to maintain attention and

concentration for extended periods." (*See* AR 82-83.) After all, the POMS define "extended periods" as "the approximately 2-hour segments between arrival and first break, lunch, second break, and departure," POMS DI § 25020.010(B)(2)(a). Thus, a determination that Plaintiff can concentrate for two-hour periods essentially equates to a finding that she can maintain concentration for "extended periods." *See Lucero v. Saul*, No. CIV 20-518 KK, 2021 WL 2589130, at *12-13 (D.N.M. June 24, 2021).

Similarly, Dr. Holloway's narrative finding that Plaintiff could perform work "with routine breaks and pace and persist for [an eight-]hour work day and 40 hour work week despite psychological symptoms" contradicts her earlier worksheet-portion finding that Plaintiff was moderately limited, and therefore impaired, in her ability to "complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of rest periods." (*See* AR 82-83.) In other words, Dr. Holloway found Plaintiff *impaired* in her ability to complete a normal workday and workweek and to persist at a consistent pace without excessive breaks and then, in her narrative finding, effectively determined the opposite. She did so without offering any explanation that would reconcile this apparent contradiction. (*See* AR 82-83.) Although the "Additional Explanation" she provided limited Plaintiff to "simple and detailed tasks of 3 to 4 steps," she gave no indication that such a limitation somehow accounted for Plaintiff's moderate limitation in completing a normal workday and workweek at a consistent pace. Without any indication to the contrary, this three-to-four-step limitation appears more logically aimed at addressing the other moderate limitations Dr. Holloway assessed – in Plaintiff's abilities to understand, remember, and carry out detailed instructions. (*See* AR 82.) In sum, Dr. Holloway's "Additional Explanation" includes no discernable limitations that would account for a moderate

limitation in completing a normal workday and workweek and performing at a consistent pace without an unreasonable number and length of rest periods.

For these reasons, the Court cannot say that the narrative finding Dr. Holloway included in the "Additional Explanation" portion of her MRFC adequately encapsulates the moderate limitations she found in the worksheet portion of that form. *See Carver*, 600 F. App'x at 619. It follows that Dr. Holloway's "Additional Explanation" cannot be considered part of the substantial evidence supporting the ALJ's RFC finding. *See Bosse*, 2019 WL 3986046, at *4.

A related question is whether the ALJ's RFC adequately accounts for the moderate mental limitations assessed by Dr. Holloway. For, at the ALJ stage, *all* of the findings in Dr. Holloway's MRFCA from – whether in the worksheet portion, the narrative portion, or elsewhere – are findings that the ALJ must consider in evaluating the medical evidence. *See Silva*, 203 F. Supp. 3d at 1159. To "turn a blind eye" to moderate limitations enumerated in the worksheet portion of an MRFCA that are "not adequately explained" in the narrative portion of that MRFCA is error. *See Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015). Yet, the ALJ here failed to specify what, if any, limitations she included in Plaintiff's RFC to account for Dr. Holloway's opined moderate mental limitations. Nor did she offer an explanation for rejecting them; indeed, her decision suggests that she accepted Dr. Holloway's findings as supported by and consistent with the record evidence. (*See* AR 19 (explaining that the state agency psychological consultants' findings were "consistent with record evidence" and "supported" by the "available medical evidence").) Critically, "[u]nless the connection (between the limitation and the work) is obvious . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker v. Comm'r, SSA*, 772 F. App'x 613, 616 (10th Cir. 2019).

Taking the moderate limitations in reverse order, the Court finds no obvious connection between the ALJ's mental RFC limitations (i.e., to simple, routine, and repetitive work, no assembly line production work, and few changes in the routine work setting) and Plaintiff's moderate limitation, per Dr. Holloway, in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *See Edgell*, 2022 WL 1987846, at *7 (reasoning that the connection between a moderate limitation in this ability and the work-related limitations to simple tasks with occasional changes in the routine work setting and occasional independent goal setting or planning was "not clear"); *cf. Lucero*, 2022 WL 2315957, at *10-11 (reasoning that the connection between a moderate limitation in this ability and the work-related limitations to more than simple but less than complex tasks, occasional interactions with others, and few changes in a routine work setting was "unclear").

Notably, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is vocationally significant in that the POMS deems it "critical for performing unskilled work." *See* POMS DI § 25020.010(A)(3)(a); *cf. Bowers v. Astrue*, 271 F. App'x 731, 733-34 (10th Cir. 2008) (observing that moderate limitations in the ability to respond appropriately to changes in a routine work setting could decrease the ability to perform simple or unskilled work because it is a general requirement for unskilled work). Moreover, SSA policies are clear that if a claimant is to perform unskilled work, the requirement that she be able to complete a normal workday and workweek without interruptions from her psychologically based symptoms and to perform at a consistent pace on a normal break schedule is "usually strict." *See* POMS DI § 25020.010(B)(3)(i). Indeed, judges in this District have suggested that a moderate

limitation in this area of functioning "would likely interfere with work in almost any setting." *See, e.g., Bosse*, 2019 WL 3986046, at *8-9 (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 (10th Cir. 2012)).

Absent some explanation from the ALJ as to how she accounted for this vocationally-relevant moderate mental limitation, the Court will not speculate that she did. *See Edgell*, 2022 WL 1987846, at * 7 (citing *Peterson v. Saul*, No. Civ. 19-486 JFR, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020)). Indeed, with few exceptions, the weight of persuasive authority in this District supports reversing on this ground. *See, e.g.*, *Estrada v. Kijakazi*, No. CV 21-0653 KRS, 2022 WL 4289936 (D.N.M. Sept. 16, 2022) (remanding for rehearing where the ALJ failed to address an opined moderate limitation in the claimant's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms on a normal break schedule); *Romero*, 2022 WL 1553295, at *10 (same); *Tafoya v. Saul*, No. CV 19-920 CG, 2020 WL 3489539 (D.N.M. June 26, 2020) (same); *Vienna v. Saul*, 2019 WL 4686718 (same); *Vamvakerides v. Colvin*, No. CV 14-00897 SCY, 2016 WL 10538097 (D.N.M. Apr. 7, 2016) (same). *But see Trujillo*, 2017 WL 2799981, at *9 (affirming the ALJ's decision and concluding that the ALJ properly incorporated into his RFC a marked limitation in completing a normal workday/workweek without interruptions from psychologically based symptoms by limiting Plaintiff to a simple, routine, and repetitive work in a routine, predictable, low-stress environment, with only occasional contact with supervisors and coworkers and minimal contact with the public).

Determining whether there is a connection between the RFC's work-related limitations and a moderate limitation in maintaining attention and concentration for extended periods is not as straightforward. This Court has previously alluded to a lack of clarity in the law on this point. *See Edgell*, 2022 WL 1987846 at *7 n.16 (explaining that it was "less clear" whether there was a

connection between an RFC limiting the plaintiff to simple tasks and a moderate limitation in maintaining attention and concentration for extended periods and ultimately resolving the case on different grounds). As the Honorable Kevin Sweazea of this District observed more directly, courts have offered "confusing, sometimes conflicting, analyses" when determining if a given RFC accounts for a moderate limitation in the ability to maintain attention and concentration for extended periods. *Saiz v. Kijakazi*, CIV No. 21-0681 KRS, 2022 WL 4235325, at *9 (D.N.M. Sept. 14, 2022). This lack of consistency is likely a product of divergent rationales offered by the Tenth Circuit as it grapples with whether and how an RFC assessment must incorporate limitations noted in the worksheet portion of an MRFCA.[7] *See id.* (discussing *Vigil*, 805 F.3d at 1203, *Smith*, 821 F.3d at 1269, *Carver*, 600 F. App'x at 919, and *Fannin v. Comm'r, SSA*, 857 F. App'x 445 (10th Cir. 2021)). Not surprisingly, judges in this District have not consistently resolved the issue of whether limiting a claimant to unskilled work adequately accounts for a moderate limitation in this area of functioning. *Compare, e.g., Padilla*, 2018 WL 3830930, at *14-15 (by limiting the plaintiff to simple work tasks and simple decisions, not at a production pace, the ALJ's RFC accounted for a moderate limitation in maintaining attention and concentration for extended periods), *with Pitts v. Kijakazi*, No. CV 20-1205 CG, 2021 WL 5049441, at *5-7 (D.N.M. Nov. 1, 2021) (by limiting the plaintiff to simple, routine and repetitive tasks, simple decisions, and dealing with changes in a routine work setting, the ALJ *failed* to account for a moderate limitation in maintaining attention

---

[7] For instance, the Tenth Circuit explained, in *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012), that a restriction to "simple work" is a vague catch-all term and insufficient to adequately account for mental limitations, *id.* at 1290 n.3, and, in *Groberg v. Astrue*, 505 F. App'x 763 (10th Cir. 2012), concluded that "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments," *id.* at 770. Yet, just a few years later, the Tenth Circuit concluded, in *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015), that a moderate limitation in "[t]he ability to maintain attention and concentration for extended periods" was adequately addressed by a narrative assessment and RFC that limited the claimant to "simple tasks." *Id.* at 542. Relatedly, it has also been noted that this District is "split" on a related issue: whether *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) held that an ALJ need not consider moderate limitations noted in [the worksheet portion] of the MRFCA." *Vienna*, 2019 WL 4686718, at *4 n.11 (citing *Silva*, 203 F. Supp. 3d at 1163 n.4; *Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019); *Mills v. Berryhill*, No. CV 16-573 CG, 2017 WL 3149414, at *10 (D.N.M. June 9, 2017)).

and concentration for extended periods). Ultimately, the Court need not resolve this somewhat thorny issue, as it has already determined that remand is warranted due to the ALJ's failure to consider the moderate limitation Dr. Holloway assessed in a different area of mental functioning. The Court therefore leaves this issue for another day.

In sum, despite describing Dr. Holloway's findings as "generally persuasive," the ALJ did not directly address the moderate limitation Dr. Holloway assessed in completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ should have accounted for this moderate limitation, either by explaining why she rejected it or by incorporating it into the RFC. She did neither. Accordingly, the Court must remand so that the ALJ can provide the required explanation or properly account for the moderate limitation in completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

### B.  The ALJ's error was not harmless.

To be clear, a more restrictive RFC to account for the impairment in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods may well have resulted in a finding of disability in this case. In other words, the Court cannot confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual questions at issue in any other way. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The VE testified that the representative jobs she identified in response to the ALJ's primary hypothetical could not be performed by an employee who was absent or

unable to complete a schedule shift more than once per month, by an employee who was unable to remain on task for a period of at least two hours, or by an employee who required two extra breaks per shift. (AR 62-63.) In these circumstances, the Court cannot say that the ALJ's error was harmless.

## V.  CONCLUSION

Having conducted a thorough review of the administrative record, the Court concludes that the ALJ erred in her review of Plaintiff's application for supplemental security income. Accordingly, Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 21) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KIRTAN KHALSA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**